JOAN H. FORREST, by Her Guardian ad Litem, MARY E. FORREST, et al., Plaintiffs, *v.* MUTUAL BENEFIT LIFE INSURANCE COMPANY, Defendant, and MARY E. FORREST, as Executrix of JAMES T. FORREST, Deceased, Impleaded Defendant.

Supreme Court, Special Term, Nassau County, February 9, 1949.

*George Morton Levy* for plaintiffs and impleaded defendant.

*Littlefield & Marshall* for defendant.

STODDART, J.  Motion and cross motion for summary judgment in an action to recover upon a policy of life insurance.

The plaintiffs are the beneficiaries under a policy procured by James T. Forrest, deceased, who was the father and the husband of the plaintiffs respectively.  The face amount of the policy was $20,000.  The insured applied for the policy on January 18, 1947, and thereafter received a policy, and paid the first premium.  Another premium was paid prior to the insured's death on November 23, 1947.  Although due notice and proof of death was given, the defendant refused to pay the face amount of the policy, but tendered the amount of the two premiums which the plaintiffs refused to accept.

The defendant, in its answer, pleads two defenses in avoidance.  It alleges that (1) the insured committed suicide and (2) made false statements upon which it relied.  A counterclaim for a cancellation and rescission of the policy is also based upon the allegations of the second defense.

Pertaining to those defenses, there is contained in the policy the following provisions:

" Suicide                                                      .

" If within one year from the date of issue hereof the Insured shall commit suicide, while sane or insane, the liability of the Company hereunder will be limited to an amount equal to the Premiums paid, less any indebtedness to the Company hereon.

" Incontestability

" Except for non-payment of Premium, this Policy will become incontestable one year after its date of issue, if the Insured be then living; or, if the Insured be not then living, two years after its date of issue."

The plaintiffs admit that those provisions are printed in the policy, but they claim that the policy was issued more than one year before the insured's death and therefore the defenses lack merit, should be stricken out, and judgment granted in their favor.

The determination of the plaintiffs' motion depends upon an answer to the question — what was the date of issue of the policy?

The application for the policy is dated January 18, 1947. The policy thereafter delivered contains a testimonium clause, dated January 20, 1947, and upon the back of the policy the words " Date, 20th January 1947." In the application there is type-written " Make first Policy year commence July 20, 1946, Age 45 ", and in the policy there is a provision which reads:

" Policy Year

" The ' Policy year ' referred to herein is the year beginning on 20th July 1946 or on any anniversary thereof."

The first premium paid was for the year ending July 20, 1947, and on or about July 20, 1947, a premium was paid for the year ending July 20, 1948.

The plaintiffs contend the " date of issue " is July 20, 1946, whereas the defendant insists that January 20, 1947, is that date.

No citation of authority is necessary to support the rule that in case of ambiguity in the terms of a written instrument, that construction will be adopted which is most favorable to the party who did not prepare the instrument — in this case, the insured.

I do not believe the policy is ambiguous. The date of issue is January 20, 1947.

The word " issue " has been defined in a general dictionary to mean as a noun — " Act of sending out, or causing to go forth; delivery; issuance; as, the *issue* of an order, of money " and as a verb — " To send out officially; to deliver by authority;

to publish or utter; to emit; as, to *issue* an order, a writ.''
(Webster's New International Dictionary [2d ed.].)

In *Homestead Fire Ins. Co.* v. *Ison* (110 Va. 18, 23) it is written: '' Lexicographers define ' issuance ' to be the act of putting, sending or giving out. The legal definition of the word is practically to the same effect — to send out officially; to deliver for use; to put into circulation. 23 Cyc. 358. * * * ' Issued,' as used in reference to the issuance of an insurance policy, means when the policy is made and delivered, and is in full effect and operation. See *Kansas Mut. Life Ins. Co.* v. *Coalson,* 22 Tex. Civil App. 64, 54 S. W. 388, 392; *Sisk* v. *Citizens Ins. Co.,* 16 Ind. App. 565, 45 N. E. 804.'' And in *Coleman* v. *New England Mutual Ins. Co.* (236 Mass. 552, 554) it is written: '' Ordinarily by the ' issue ' of an insurance policy is meant its delivery and acceptance whereby it comes into full effect and operation as a binding mutual obligation. *Homestead Fire Ins. Co.* v. *Ison,* 110 Va. 18, 23. *Logsdon* v. *Supreme Lodge Fraternal Union of America,* 34 Wash. 666. Sometimes it is used in the sense of the preparation and signing of the instrument by the officers, as distinguished from its delivery to the insured. See *Dargan* v. *Equitable Life Assurance Co.,* 71 S. C. 356, 361; *Kansas Mutual Life Ins. Co.* v. *Coalson,* 22 Tex. Civ. App. 64, 73; *Stringham* v. *Mutual Ins. Co.,* 44 Ore. 447.''

It follows from the foregoing definitions that the actual date of issue must have been on or about January 20, 1947.

In support of their contention that July 20, 1946, is the date of issue, the plaintiffs cite *Harrington* v. *Mutual Life Ins. Co.* (21 N. D. 447) and *Mutual Life Ins. Co.* v. *Hurni Packing Co.* (263 U. S. 167). The facts of those cases are somewhat similar to this case, but there are several important respects in which they differ. In both cited cases, the contract of insurance was to cover a period which had passed, but in both cases the policy actually bore the date from which the coverage started as the date of execution of the policy. The rules of the insurance company in the North Dakota case provided for the dating back of policies, and the application in the Supreme Court case also provided for the antedating of the policy.

The Supreme Court case shows that the policy was applied for on September 2, 1915, executed on September 7, but antedated August 23, 1915, as requested in the application. The insurance company contended the date of issue was September 7th. With respect to the significance of the word '' date '' and the meaning which should be attributed to the date which appears on the policy that court wrote (pp. 174–176):

" The word ' date ' is used frequently to designate the actual time when an event takes place, but, as applied to written instruments, its primary signification is the time specified therein. Indeed this is the meaning which its derivation (*datus* = given) most naturally suggests. In *Bement & Dougherty* v. *Trenton Locomotive, &c., Co.,* 32 N. J. L. 513, 515–516, it is said: ' The primary signification of the word *date,* is not time in the abstract, nor time taken absolutely, but, as its derivation plainly indicates, time *given* or specified, time in some way ascertained and fixed; this is the sense in which the word is commonly used. When we speak of the date of a deed, we do not mean the time when it was actually executed, but the time of its execution, as given or stated in the deed itself. The date of an item, or of a charge in a book account, is not necessarily the time when the article charged was, in fact, furnished, but simply the time given or set down in the account, in connection with such charge.' * * *

" Here the words, referring to the written policy, are ' from its date of issue.' While the question, it must be conceded, is not certainly free from reasonable doubt, yet, having in mind the rule first above stated, that in such case the doubt must be resolved in the way most favorable to the insured, we conclude that the words refer not to the time of actual execution of the policy or the time of its delivery but to the date of issue as specified in the policy itself. *Wood* v. *American Yeoman,* 148 Iowa, 400, 403–404; *Anderson* v. *Mutual Life Ins. Co.,* 164 Cal. 712; *Harrington* v. *Mutual Life Ins. Co.,* 21 N. D. 447; *Yesler* v. *Seattle,* 1 Wash. 308, 322–323. It was competent for the parties to agree that the effective date of the policy should be one prior to its actual execution or issue; and this, in our opinion, is what they did. Plainly their agreement was effective to govern the amount of the premiums and the time of their future payment, reducing the former and shortening the latter, *and, in the absence of words evincing a contrary intent, we are unable to avoid the conclusion that it was likewise effective in respect of other provisions of the policy, including the one here in question.* This conclusion is fortified by a consideration of the precise words employed, which are ' from *its* [that is, the policy's] date of issue;' or, in other words, from the date of issue as specified in the policy. It was within the power of the Insurance Company if it meant otherwise, to say so in plain terms. Not having done so, it must accept the consequences resulting from the rule that the doubt for which its own lack of clearness was responsible must be resolved against it." (Emphasis supplied.)

In the present case, the policy stated a date which was the actual date of issue. That date under the above authorities must be regarded as the date which the parties agreed upon, unless proof to the contrary is produced. What is that proof? The first premium covers a period which had passed in part before the agreement was entered into, but there is no requirement that the date of issue, or the date upon the policy, must be the same as the date from which the coverage runs. (*Mutual Life Ins. Co.* v. *Hurni Packing Co., supra; Prudential Ins. Co. of America* v. *Connallon,* 108 N. J. Eq. 316; *Whitney* v. *Union Central Life Ins. Co.,* 47 F. 2d 861.) Aside from the payment of the premiums for the time which had passed, the plaintiffs point to the application and the policy provisions regarding the commencement of the policy year. Certainly the direction that the policy year shall commence on a particular date does not mean that the policy shall be dated or issued as of the first day of the first policy year. When the policy year begins and ends has a definite relation to the premium rate, the dividends, the loan values, the surrender values, paid-up insurance, and the maturity date, but it has no relation to the suicide or incontestability provisions of the policy.

The commencement of the policy year means the same as the policy anniversary date. In *Whitney* v. *Union Central Life Ins. Co.* (*supra*) where the policy was issued April 20, 1927, with the insurance effective from March 22, 1927, and the latter date was the policy anniversary date, the court wrote at page 865: '' The term policy anniversary evidently refers to the date of the payment of the first quarterly premium. Under the terms of the policy certain privileges and benefits are provided with reference to the policy anniversary. These benefits are based upon the premiums paid. The surrender values and loan values depend upon the anniversary year of the policy. We think these provisions relate entirely to settlements and amounts to be paid, and have nothing to do with the time when the insurance contract goes into effect.''

The insured herein received the benefit of a lower premium rate by starting the policy year six months earlier than the date of issue, but in the absence of clear language in the application or the policy showing that the policy in its entirety was to be dated back, there is no basis for the inference that the defendant agreed to shorten its suicide and incontestability provisions. The court in *Horwitz* v. *New York Life Ins. Co.* (80 F. 2d 295) held that a policy which had a testimonium clause dated January 7, 1931, should be regarded as dated September 29, 1930,

as the application which constituted a part of the contract provided " Date Policy as of Sep. 29, 1930 ", and there would be no hesitancy in this court's making a similar finding if the application or the policy herein contained equivalent words indicating an agreement to date the policy as of July 20, 1946.

In view of the fact that the insured died within one year of the date of issue, the court may not grant summary judgment for the plaintiffs as issues of fact are created by the interposition of the suicide and false representation defenses.

The defendant's cross motion for summary judgment is also denied for the following reasons. In the absence of any order compelling a reply to the affirmative defense of suicide, there is no necessity of a reply and the matter contained in the defense is deemed to be denied (*Hardecker* v. *Klem,* 249 App. Div. 736; *Union Trust Co.* v. *Barber,* 177 N. Y. S. 590). The plaintiffs have served a reply to the counterclaim, and on its face the reply does not reveal frivolous denials. Without proof, the court cannot say that these plaintiffs know that allegations regarding the insured's drinking habits are true. Aside from the pleadings, the application, and the policy, there has been nothing submitted by either party.

Accordingly, the motion and cross motion for summary judgment are denied.

Settle order on notice.