**Mrs. Amelia Mills BYRAM**

v.

**EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.**

No. 6460.

United States District Court
W. D. Louisiana,
Alexandria Division.

June 15, 1959.

Stafford & Pitts, Alexandria, La., for plaintiff.

Chaffe, McCall, Phillips, Burke & Hopkins, New Orleans, La., Gist, Murchison & Gist, Alexandria, La., for defendant.

HUNTER, District Judge.

This suit on two life insurance policies issued by defendant was instituted in State Court and removed here on the basis of diversity.

One policy bears the number MP 14,-742,108, and is in the face amount of $10,000. This policy bears a register date of April 16, 1955 and a date of issue of May 9, 1955. The second policy bears the number MP 14,785,307, and is in the face amount of $20,000. It bears the register date of April 16, 1955, and date of issue of July 6, 1955. Each of the policies named plaintiff, insured's wife, as beneficiary. Each policy contains the following clause:

> "Suicide. In the event of the suicide of the insured, sane or insane, within two years from the Date of Issue, the Society's liability will be limited to the payment to the person entitled to receive the first payment on account of the proceeds of this policy, of a single sum equal to the premiums actually paid under this policy less any indebtedness to the Society against this policy."

Plaintiff alleges that the insured died on May 7, 1957; that due proof of the death had been made; and that the policies were in full force and effect at the date of said death. Defendant answered, admitted the death, but alleged that the insured committed suicide and cited the clause relative to suicide contained in the policies, and averred that inasmuch as the death by suicide had taken place within two years from the "Date of issue" of the policies, defendant's liability thereon is limited to a return of the premiums paid.

### Evidence

The case was submitted on the pleadings, certain exhibits, and a stipulation. The facts as set forth in the stipulation establish, and the court finds, that the insured, a fine and outstanding citizen of Rapides Parish, Louisiana, took his own life on May 6, 1957 by committing suicide.

### Statutory Law

The Revised Statutes of the State of Louisiana, in effect at the time of application for and issuance of the above specified policies, and in effect at the time of death by suicide of the insured, contained the following provisions:

LSA–R.S. 22:170

> "A. No policy of life insurance, except as stated in Sub-section C, shall be delivered or issued for delivery in this state unless it contains in substance the following provisions or provisions which in the opinion of the Secretary of State are more favorable to the policyholder:
>
> \*   \*   \*   \*   \*   \*
>
> "(2) A provision that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its *date of issue*, except for non-payment of premiums and except for the conditions of the policy relating to military or naval service, or services auxiliary thereto; and at the option of the insurer, provisions relating to benefits in the event of disability, as defined in the

policy, and provisions which grant additional insurance specifically against death by accident or accidental means, may also be excepted. (Italics supplied.)

\* \* \* \* \* \*

"B. No policy of life insurance delivered or issued for delivery in this state shall contain any provisions which excludes or restricts liability for death caused in a certain specified manner or occurring while the insured has a specified status, except the following provisions, or provisions which in the opinion of the Secretary of State are substantially the same or more favorable to policyholders:

"Provisions excluding or restricting coverage in the event of death occurring:

\* \* \* \* \* \*

"(3) As a result of self-destruction while sane or insane within two years from the *date of issue* of the policy." (Italics supplied.)

LSA–R.S. 22:171

"No insurer shall knowingly deliver or issue for delivery in this state any policy or contract of life insurance which purports to be issued or to take effect as of a date more than six months before the application therefor was made, if thereby the premium on such policy or contract is reduced below the premium which would be payable thereon as determined by the nearest birthday of the insured at the time when such application was made. No agent or other representative of an insurer shall in this state prepare, submit or accept any application for life insurance which bears a date earlier than the date when such application was made by the insured or applicant, if thereby the premium on such policy is reduced as above stated. \* \* \*"

The facts with respect to the issuance of the policies, etc. are somewhat similar, though there are certain differences which we will review.

On April 14, 1955, James E. Byram, Jr. signed a written application with the defendant for the $10,000 policy. The first monthly annual premium on this policy was $28.70 and Mr. Byram paid that amount on April 14, 1955. He received from Mr. McLure, defendant's soliciting agent, a written receipt, which reads as follows:

"Received of J. E. Byram, Jr., No. J 563581 Twenty-eight & 70/100 ......Dollars the first monthly annual premium on proposed insurance for $10,000 on the life of J. E. Byram, Jr. for which Part I of an application bearing a corresponding number as above is this day made to The Equitable Life Assurance Society of the United States, Insurance, *subject to the terms and conditions of the policy contract, shall take effect as of the date of this receipt*, provided Part II of the application is furnished to the Society and provided the person whose life is proposed for insurance is on this date, in the opinion of the Society's authorized officers in New York, an insurable risk under its rules and the application is otherwise acceptable on the plan and for the amount and at the rate of premium applied for; otherwise the payment evidenced by this receipt shall be returned on demand and upon the surrender of this receipt.

"Dated at Alexandria, La., 14 April, 1955

"(Signed) J. M. McLure, Agent." (Emphasis added.)

Mr. Byram was examined on April 16, 1955, and this policy was subsequently issued bearing a register date of April 16, 1955 and a "Date of Issue" date of May 9, 1955. The second policy ($20,000) was not applied for until June 9, 1955, but the application contained the following:

"Please date contract 16 April, 1955 conserving age 42. Issue on medical dated 16 April, 1955 in issuing contract No. 14,742,108."

This application was signed by both the insured and the agent, and on June 13, 1955, Mr. Byram issued his check to the Equitable for $172, representing the first quarterly premium on the policy. This check paid the premium on the policy for three months beginning April 16, 1955. This was the date that Mr. Byram specified in the application which the company accepted and acted upon.

## Discussion

■■ The sole question in the case is: What was the date of issue? Doubts, inconsistencies and/or ambiguities in a contract of insurance must be resolved in favor of the insured and against the insurance company. Counsel for defendant argues that Mr. Byram paid to defendant premiums to cover all benefits and all rights of whatever nature from April 16, 1955, until and beyond April 16, 1957—in short, that he paid for everything in the policies for more than two years. Then it is argued that one of the benefits which he bought and paid for was the start and the running of the incontestable clause, or the period of time within which the company could contest the validity of the policies. Plaintiff insists that it is inequitable to permit an insurance company to accept a premium making the effective date relate back to the date of application, and then by the use of the words "Date of issue" to delay the beginning of the running of the suicide and incontestable provisions of the policy. A careful reading of the jurisprudence convinces us that we are not free to agree with plaintiff, and on the jurisprudence, defendant must prevail. Specific reference is made to Crowley v. Travelers Insurance Company, 5 Cir., 1952, 196 F.2d 315; New York Life Insurance Co. v. Noonan, 9 Cir., 1954, 215 F.2d 905; Davis v. Fidelity Mutual Life Insurance Co., 4 Cir., 1939, 107 F.2d 150; Forrest v. Mutual Benefit Life Insurance Company, 1949, 195 Misc. 12, 86 N.Y.S.2d 910, 916, affirmed 275 App.Div. 939, 89 N.Y.S.2d 488. No Louisiana case has been cited and the court has found none bearing on the specific problem before us, but the Louisiana Statute is the uniform one, and on the basis of authorities heretofore cited, we find that (1) There are no doubts, inconsistencies or ambiguities here. (2) The entire contract is set out in the policy and the application. Clearly, the policies were in effect from April 16th for every purpose except the suicide and incontestable provisions. The latter are on their face governed by the "Date of Issue", which was specifically stated in the policies to be May 9th and July 1st, respectively. The register dates and the date of issue serve entirely different purposes. (3) The insured's suicide occurred within two years from the specified date of issue; hence, defendant's obligation is limited to the return of the premiums paid.

A number of authorities have been cited by the parties, and we feel, as heretofore stated, that the authorities cited by defendant are applicable and conclusive. In Crowley (supra), the Fifth Circuit, speaking through its Chief Judge, held that where a life insurance policy recited a certain date as an issue date, and that the suicide clause in the policy began to run from such date, the contract date anterior to both application and date of issue which appeared on the first page of the policy was simply for the benefit of insured in the saving of premiums. There, the Fifth Circuit held that there was no ambiguity arising which would have required the rule of more favorable construction in favor of assured to be invoked. The following language used by Judge Hutcheson in Crowley is applicable here [196 F.2d 316]:

"* * * that in both provisions the issue date is named as controlling; and that, this being so, the rule of the more favorable construction in favor of assured, invoked by appellant, is without application here.

"The contract as a whole sets up two dates having different purposes and effects. The Contract Date, set up in capitals wherever used, fixes the date on which the premiums are to be paid, describes the period for which the term insurance policy is effective, and is also material in connection with the conversion privilege of the policy.

"The date of issue, the date issued, the issue date, serves the purpose of marking the time on, or from which, certain clauses in the policy, the incontestable clause, the suicide clause, begin to run.

"The Contract Date, anterior to both the date of application and the date of issue, was placed in the contract at the request of the insured and for his benefit in the saving of premiums.

"It thus appearing that the phrase, 'the date of issue', 'the date issued', serve one purpose, and the Contract Date quite another, all basis for the contention that there is a conflict or an ambiguity between application and contract falls, and the judgment is seen as a correct judgment in principle and well supported by authority. Davis v. Fidelity Mutual Life Ins. Co., 4 Cir., 107 F.2d 150; Forrest v. Mutual Benefit Life Ins. Co., 275 App.Div. 939, 89 N.Y.S.2d 488."

"The judgment is affirmed."

Counsel for plaintiff relies heavily on Hurni, decided by the Supreme Court of the United States in 1923 [2]. The facts of Hurni are not the facts of this case. There, the policy was applied for on September 2, 1915 and the testimonium clause (*the only date mentioned in the policy*) read, "In Witness Whereof, the company has caused this policy to be executed this 23rd day of August, 1915." On trial, parole evidence was adduced to show that the policy had been physically executed on September 7, 1915 and delivered on September 13, 1915. It should be noted that in Hurni, the company antedated the policy entirely and without reservation as to the "Suicide" and "Incontestable" clauses. In this case, the company expressly set forth the "Date of Issue", and expressly provided that the "suicide" and "incontestable" periods should run from those dates. That the defendant had a perfect right to do what it did here was expressly recognized by the Supreme Court of the United States in Hurni:

"It was competent for the parties to agree that the effective date of the policy should be one prior to its actual execution or issue; and this, in our opinion, is what they did. Plainly, their agreement was effective to govern the amount of the premiums and the time of their future payment, reducing the former and shortening the latter, and, in the absence of words evincing a contrary intent, we are unable to avoid the conclusion that it was likewise effective in respect of other provisions of the policy, including the one here in question. This conclusion is fortified by a consideration of the precise words employed, which are 'from its (that is, the policy's) date of issue,' or, in other words, from the date of issue as specified in the policy. It was within the power of the insurance company if it meant otherwise, to say so in plain terms. Not having done, so, it must accept the consequence resulting from the rule that the doubt for which its own lack of clearness was responsible must be resolved against it."

No useful purpose is to be served here by reviewing the details of the various cited cases. Suffice it to say that Crowley, supported by Noonan, Davis and Forrest, and by the broad principles laid down by Hurni, control the instant case.

Plaintiff's suit should be dismissed and plaintiff is referred to the money placed

---

**2.** Mutual Life Insurance Company of New York v. Hurni Packing Co., 263 U.S. 167, 44 Ct. 90, 91, 68 L.Ed. 235.

in the Registry of Court as a refund of premiums paid ($2,166.60).

This memorandum does *not* constitute a final judgment. It will be final only after the signing of a formal judgment, which should be submitted, together with appropriate findings by counsel for defendant.