Hanna **ROSNER,** as Guardian of Israel Rosner, Hanna Rosner, Individually, **Plaintiff–Appellee,**

Charles D. Mintz, Letty Mintz, Third–Party–Defendant–Appellees,

v.

**METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY,** Defendant–Third–Party–Plaintiff–Appellant.

No. 99–9110.

United States Court of Appeals, Second Circuit.

Argued May 22, 2000.

Dec. 12, 2000.

Edward B. Flink, Latham, New York (Flink, Smith & Associates, LLC), for Defendant–Appellant.

Brian J. Isaac, New York, New York (Herbert S. Subin, Subin Associates LLP, of counsel), for Plaintiffs–Appellees.

Before: LEVAL and SOTOMAYOR, Circuit Judges, and MURTHA, District Judge.*

---

* The Honorable J. Garvan Murtha, Chief Judge of the United States District Court for the

LEVAL, Circuit Judge:

This sad occurrence presents a complex question concerning the meaning of an unclear statute governing the administration of insurance in New York. Plaintiff, suing as guardian of a person injured in a traffic accident, sought a declaratory judgment that an insurance policy issued by the negligent driver's insurer, defendant Metropolitan Property and Liability Insurance Company, remained in effect on the date of the accident. The United States District Court for the Eastern District of New York, Raymond J. Dearie, Judge, granted summary judgment in plaintiff's favor, from which the insurer brought this appeal. The appeal turns on the meaning of the phrase, "the date as of which a policy is first issued" in Section 3425(a)(7) of the New York Insurance Law. The rulings of New York courts provide no authoritative guidance on the question. Because it is highly desirable for the benefit of both insurers and insureds to have the question authoritatively answered, we think it best to seek the guidance of the highest court of New York. Accordingly, we certify this question of the interpretation of a New York statute to the New York Court of Appeals and respectfully request the Court's guidance.

## Background

On May 29, 1996, Israel Rosner was struck while walking on Route 306 in the Village of Kaiser, New York, by a motor vehicle operated by Charles Mintz. Israel Rosner suffered massive head injuries and has been institutionalized since the date of the accident.

At the time of accident, Metropolitan insured Charles and Letty Mintz under a policy of automobile liability insurance with single limit liability coverage of $100,000.[1] In addition, for a number of years previously, Metropolitan also insured the Mintzes under a personal excess liability insurance policy for one million dollars in excess of other coverage. The question presented in this litigation is whether this excess policy remained in effect on May 29, 1996.

The genesis of the excess liability policy was as follows: Effective May 25, 1988, the Mintzes contracted with Metropolitan for a one-million dollar personal excess liability insurance policy. Because the personal excess liability policy was a "covered policy" under New York Insurance Law Section 3425(a)(2), Metropolitan was required to comply with New York's "required policy period" rules as set forth in Sections 3425(a)(7) and 3425(e), under which covered personal lines policies must be extended for "three years from the date *as of which a covered policy is first issued or is voluntarily renewed.*" N.Y.Ins.Law § 3425(a)(7) (McKinney's 2000) (emphasis added).[2] Accordingly, as mandated, Metropolitan granted the Mintzes two consecutive one-year renewals of the policy, covering the periods May 25, 1989 to May 25, 1990, and May 25, 1990 to May 25, 1991. Upon the completion of the first three-year period, Metropolitan and the Mintzes agreed to renew the policy effective May 25, 1991, thus triggering a second three-year required policy period under the statute. Pursuant to the requirement of the statute, Metropolitan granted the Mintzes a one-year renewal extending from May 25, 1992 through May 25, 1993.

During the policy year beginning May 25, 1992, Mr. Mintz's employer instituted a group insurance program known as "MET-

District of Vermont, sitting by designation.

1. On September 25, 1996, Metropolitan tendered $100,000 in satisfaction of its obligations under the automobile liability insurance policy issued to the Mintzes.

2. Section 3425(c)(2) sets out limited grounds on which an insurer may cancel or nonrenew a covered policy during the required policy period, including nonpayment of premiums, conviction for certain crimes, fraud or material misrepresentation by the insured, certain willful or reckless acts by the insured, and certain physical changes in the insured property. None of these grounds is at issue in this case.

PAY," which allowed employees to purchase insurance at a group-rate discount through payroll deductions. The Mintzes enrolled in METPAY in April 1993, and arranged that the METPAY payroll deduction plan would pay the premiums for their personal excess liability policy and their automobile policy. But the transfer of the Mintzes' policies to the METPAY program was mishandled. Because of various administrative errors by Metropolitan and oversights by the Mintzes (none of which is important in this litigation), the Mintzes' personal excess liability policy was canceled on July 15, 1993.

In the fall of 1993, the Mintzes and Metropolitan finally straightened out the transfer of their policies to METPAY. Metropolitan issued a new personal excess liability policy to the Mintzes. The new policy was issued on October 11, 1993, but showed an effective date of May 25, 1993, thus providing continuous coverage coterminous with the Mintzes' previous personal excess liability policies. Pursuant to the three year required policy period of the New York Insurance Law, the Mintzes and Metropolitan entered into two subsequent one-year renewals, extending coverage through May 25, 1996.

Early in 1996, however, Metropolitan decided to terminate, or "nonrenew" as it is said in the New York insurance industry, the excess policy. This was because of two accidents in which the insureds were at fault, another no-fault accident, and multiple claims on the Mintzes' homeowner policy. On March 27, 1996, Metropolitan mailed a notice of cancellation to the Mintzes, stating that their excess liability policy would be canceled effective May 25, 1996. Metropolitan refused to reconsider its decision, and the Mintzes did not arrange for excess liability coverage after May 25, 1996. Four days after that date, Charles Mintz struck Israel Rosner, causing the injuries out of which this litigation arises.

The Rosners sued the Mintzes in New York State Supreme Court, Kings County.

On September 18, 1997, Metropolitan tendered $100,000 to the plaintiffs under the Mintzes' basic automobile insurance policy, in full satisfaction of Metropolitan's liability under the policy. Hanna Rosner, as Israel's guardian and on her own behalf, then brought this action against Metropolitan seeking a declaratory judgment that the Mintzes' one-million dollar personal excess liability policy remained in effect on May 29, 1996, the date of the accident. The parties engaged in discovery and stipulated to the material facts. The Rosners moved for summary judgment on the theory that Sections 3425(a)(7) and 3425(e) required Metropolitan to extend coverage on the excess liability policy for three years from October 11, 1993, the date on which Metropolitan executed the Mintzes' policy. Metropolitan cross-moved for summary judgment, arguing that the relevant date for determining the required three-year period was not the date on which the policy was executed but rather May 25, 1993, the date as of which the policy became effective. Without authoritative guidance from the New York courts, Judge Dearie ruled that in the absence of a specified "issue date" in the policy itself, the required policy period under New York Insurance Law for a covered personal lines insurance policy runs from the date on which the policy is executed, rather than from its effective date. Accordingly, Judge Dearie entered judgment for the plaintiffs. Metropolitan brought this appeal.

## Discussion

The parties agree that the determination of this appeal turns on the proper interpretation of Sections 3425(a)(7) and 3425(e) of the New York Insurance Law, which govern personal lines insurance policies other than automobile insurance policies. Section 3425(e) provides that absent one of several enumerated grounds for cancellation or nonrenewal (none of which is at issue in this litigation), "no notice of nonrenewal or conditional renewal of a covered

policy shall be issued to become effective during the required policy period." N.Y.Ins.Law § 3425(e). Section 3425(a)(7) defines the "required policy period" for personal lines policies other than automobile policies as "a period of three years from the date as of which a covered policy is first issued or is voluntarily renewed." N.Y.Ins.Law § 3425(a)(7).

The meaning of the critically important phrase "the date as of which a covered policy is first issued," which triggers the three-year required policy period and determines whether the policy remained in effect on the date of the accident, is unclear. Indeed, our panel is split as to the plainest reading the statute. In our view, there are at least three possible readings of the phrase "the date as of which a covered policy is first issued." We discuss the most likely readings.

1. Plaintiff's Interpretation: Plaintiff interprets the phrase "the date as of which a covered policy is first issued" to mean the date on which the policy was executed (or delivered) by the insurer. Part of our panel believes that this reading fits best with the plain language of the statute.

(a) Plaintiff's reading focuses on the plain meaning of the phrase "is first issued," which could be said to support reading the statute as referring to the date on which the policy was actually executed by the insurer. The concept of "issuance" of a contract or policy ordinarily refers to the delivery of the document rather than to the date on which it becomes effective.[3]

(b) Such a reading finds further support in the structure of subsection 3425(a) as a whole. The subsection contains two different definitions of "required policy period," one for the three-year required policy period for personal lines insurance other than automobile insurance, and another for the one-year required policy period set out in the statute for automobile insurance. The former definition (the one relevant to this case) measures the period from the date "as of which a covered policy *is first issued* or is voluntarily renewed." N.Y.Ins.Law § 3425(a)(7) (emphasis added). The latter definition, by contrast, measures the required policy period for automobile insurance from "the date as of which a covered policy *becomes effective* after first issuance or voluntary renewal." N.Y.Ins.Law § 3425(a)(8) (emphasis added). The legislature's use of the words "becomes effective" to define the required policy period for automobile insurance might be viewed as indicating by negative implication that the provision at issue in this case ("the date as of which a covered policy is first issued") refers to the date a policy "is ... issued" and not to the date a policy "becomes effective." *See* N.Y.Stat.Law § 231 ("It is not to be supposed that the Legislature will deliberately place words or phrases in a statute without any purpose in view.").

(c) Moreover, there is support for this reading in the New York insurance case law. In another context, the Appellate Division, Second Department, has held that "[a] policy of insurance *is issued* when it is delivered and accepted, whereby it comes into full effect and operation as a binding mutual obligation, or when it is prepared and signed, as distinguished from its delivery to the insured." *Taggert v. Security Ins. Co.*, 277 App.Div. 1051, 1051, 100 N.Y.S.2d 563, 564 (1950) (emphasis added) (dismissing an insurance policy claim where the policy adopted a contractual limitations period, which by its own terms was to be enforced only if valid under the laws of the state in which the policy "was issued" on the grounds that the policy "was issued" in New York and that the contractual limitations period was valid under New York law).

2. Defendant's Interpretation. A second reading of the statute, urged upon us

---

**3.** The part of our panel that favors defendant's interpretation considers this reading defective in that it disregards the significance of the words "as of." *See infra* p. 99–100.

by Metropolitan, would hold that "the date as of which a covered policy is first issued" means the effective date of the policy. Part of our panel believes that this is the best reading of the statute. The considerations that argue in favor of reading the statute as referring to the effective date of a covered policy are as follows:

(a) As a linguistic matter, this approach makes sense of the statute's use of the phrase "as of which." The phrase "as of" in connection with a date generally refers to a designated date of contractual significance, a date mutually agreed upon for contracting purposes, for example, rather than the date of an event such as signature or delivery. *See* Wilson Follett, *Modern American Usage: A Guide* 76 (Jacques Barzun ed., 1966) ("[*A* ]*s of* is justified only as a device for assigning an event to one time and the report and recognition of it to another."). It is especially useful for making reference to dates designated as retroactive. *See id.* Thus, "as of" is not merely a synonym for "on," and use of "as of" for "on" is held to be improper. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 80 (2d ed.1995). By some accounts the phrase "as of" is peculiarly suited to referring to the effective date of an agreement. *See id.* ("[T]he phrase [as of] frequently signifies the effective legal date of a document, as when the document is backdated or when the parties sign at different times."); *see also Black's Law Dictionary* 109 (7th ed.1999) (same). Accordingly, the words "as of" in the required policy period definition suggest that the date referred to is not the date of signature or delivery, but rather a constructive date agreed upon by the parties either as the effective date of the policy, or as a date of some other sort of contractual significance.[4]

(b) Furthermore, reading the "as of" clause as referring to the date of a covered policy's execution or delivery rather than its effective date would have problematic results under the statutory scheme for both insurers and insureds alike.

(i) The effective date is of far greater significance than the date of execution for the agreement between the parties; it designates the date when coverage begins, and usually derivatively the date when it ends.[5] The date of execution, in contrast, may be happenstance and generally has no significance with respect to the rights and duties of the parties. To read the required period for personal lines insurance as triggered by the execution date would thus add complexity without benefit to the insurance law by giving important significance to dates that previously had none.

(ii) Plaintiff's reading might also interfere with the statute's achieving its objective. When the provision was first drafted in 1974, the New York Insurance Department explained that its purpose was "to provide a three year period of guaranteed renewability" and to establish "guaranteed continuity of coverage" within that period. *See* N.Y. Legis. Ann.1974, at 219, 220–21. If the phrase is read to mean the date on which a policy was executed or delivered, the statute will result in three years of

---

**4.** The part of our panel that favors plaintiff's interpretation would disagree, finding no need to refer to the use of the phrase "as of" if the plain language of the statute renders its meaning clear. That part of the panel would emphasize that if the statutory language is comprehensible on its face, it is unlikely that the legislature intended, by use of the words "as of," to convert the date on which a policy "is first issued" to mean the effective or some other date of the policy.

**5.** A number of provisions of the New York Insurance Law turn on the effective date of a

covered policy. *See, e.g.,* N.Y.Ins.Law. § 3425(b) ("During the first sixty days a covered policy is in effect, no notice of cancellation shall be issued or be effective unless it states or is accompanied by a statement of the specific reason or reasons for such cancellation."); *id.* § 3425(c) (providing that no notices of cancellation shall be issued to become effective "[a]fter a covered policy has been in effect for sixty days, or upon the effective date if the policy is a renewal" other than in certain enumerated circumstances).

coverage only where the insurer executes the policy on the same day it is to become effective. If the insurer agrees to cover the insured under its standard terms as of a specified date and accepts the premium payment, but never executes or delivers a written policy, it is unclear how the required policy period would be applied. If the policy is executed prior or subsequent to its effective date, the coverage will be respectively shorter or longer than three years. In many cases, of course, prudent consumers will arrange for casualty or property insurance in advance of the date on which the need for coverage begins. For policies executed before their effective date, a reading of the statute that measures the required policy period from the execution date would produce a required policy period that expires prior to three years from the effective date of the policy. Subject to its obligations under the policy contract, an insurer could thus cancel the policy before it had been in effect for three years. Alternatively, in the common situation where the insurer agrees to provide insurance as of an effective date, but does not sign or issue the document representing the policy until a later time, the use of the execution date as the start of the required three year period would force insurers to maintain the insurance in effect for more than three years. This circumstance would often arise in situations like the one presented here, where in order to satisfy the goal of providing continuous coverage, the parties have agreed to an effective date that is earlier than the date of the policy's execution. By contrast, a reading of the statute that calculates the required policy period by reference to the effective date ensures, as the Department appears to have envisioned in 1974, that the period during which the policy may be renewed provides for three years of continuous coverage. This reading of the statute thus has the virtue of achieving considerable economies in the interpretation and administration of the state's insurance law.

(c) The drafting history of the provisions now codified at 3425(a) appears to limit the strength of plaintiff's argument, noted above, that the different language in subsections 3425(a)(7) ("is first issued") and 3425(a)(8) ("becomes effective") militates by negative implication against reading 3425(a)(7) to refer to the effective date of a covered policy. As enacted in 1974, the provision now at issue in this case originally applied to personal lines insurance, which then included automobile liability insurance as well as consumer casualty and property insurance. In 1979, however, the legislature reduced the required policy period for automobile insurance to one year in order to encourage automobile insurers to undertake reasonable underwriting risks without fear of being locked into long-term insurance contracts with bad insurance risks. *See* Governor's Memorandum, 1979 N.Y. Laws 1825, 1826. In doing so, the legislature left unchanged the provision at issue in this case, now codified at Section 3425(a)(7), but added a new provision to establish the shorter one-year required policy period for automobile insurance, now codified at Section 3425(a)(8). This provision introduced the new language reviewed above that defines the required policy period in automobile insurance as beginning on "the date as of which a covered policy *becomes effective.*" N.Y.Ins. Law § 3425(a)(8) (emphasis added).

The argument that differences in the statutory language must be read to signify differences in meaning would be stronger if the provision here in question—the personal lines provision—had been the later enactment. The automobile provision *clearly* selects the effective date of a policy as the point of departure for the one-year mandatory period. Had the legislature thereafter adopted different language to define the starting point for personal lines, the difference might support the argument that the legislature intended to select a different starting point from the one designated for automobile policies. But where, as here, the ambiguous provision was

passed earlier than the clear provision, the change of formulation might well have been designed only to make more clear in the second version what was intended also in the first.

The apparent legislative understanding of the 1979 amendments weighs against viewing differences in the wording of the required policy period definitions as significant. The Superintendent of Insurance, who played an important role in the drafting of the 1979 provisions, explained that with respect to the "key terms" of the 1979 automobile insurance provisions, "[t]he definitions *are essentially the same* as those now contained in [the 1974 provision], except that 'required policy period' is one year, rather than three years." Letter of Albert B. Lewis, Superintendent of Insurance, to Hon. Richard Brown, Counsel to the Governor, June 28, 1979, at 3 (emphasis added). Superintendent Lewis's view that the required policy periods for automobile and personal lines insurance differ only in their duration indicates that we should not make too much of the differences in wording between subsections 3425(a)(7) and 3425(a)(8). Indeed, it is equally possible that the slight difference of language between the two provisions signifies nothing at all. The Court of Appeals has recently expressed the view that not every change in statutory language should be construed to entail a substantive change in meaning; some changes reflect "nothing more than a stylistic drafting choice." *Henry v. City of New York,* 94 N.Y.2d 275, 281, 702 N.Y.S.2d 580, 584, 724 N.E.2d 372, 376 (1999). This is all the more probable where no likely reason is suggested as to why the legislature would have created a required policy period scheme in which different kinds of consumer insurance policy periods were timed according to different starting points.

(d) As with plaintiff's reading, there is modest support in New York case law for defendant's reading. Under an analogous and almost identically worded provision in Section 3426 of the Insurance Law (governing commercial lines insurance), one New York court has treated "the date as of which a covered policy is renewed" as the effective date of the renewal rather than the actual date of the renewal's execution. *See Pallotta v. Physicians' Reciprocal Insurers,* 137 Misc.2d 223, 224–27, 520 N.Y.S.2d 105, 106–07 (1987). However, the precise timing of the required policy period was not at issue in that case, and the court gave no consideration to alternative possibilities. *See id.*

3. A third reading of the statute would read "the date as of which a covered policy is first issued" as neither the date of the policy's execution, nor its effective date, but rather as a reference to an "issue date," which is a term of art in the law of insurance. The parties to contracts of insurance sometimes have use for a functional date which is distinct from the date of execution and from the effective date. Some insurance contracts, for example, establish an "issue date," distinct from the "effective date," from which to measure the latest time when the insurer may deny claims on the basis of material misstatements by the insured or on the grounds that the insured committed suicide, *see, e.g., Guardian Life Ins. Co. v. Schaefer,* 70 N.Y.2d 888, 889–90, 524 N.Y.S.2d 377, 378, 519 N.E.2d 288, 289 (1987); *Forrest v. Mutual Benefit Life Ins. Co.,* 195 Misc. 12, 14–17, 86 N.Y.S.2d 910, 911–14 (1949); *see also Mutual Life Ins. v. Hurni Packing Co.,* 263 U.S. 167, 173–76, 44 S.Ct. 90, 68 L.Ed. 235 (1923), or for other contractual purposes, *see, e.g., B.T.R. East Greenbush Inc. v. General Accident Company,* 206 A.D.2d 791, 791–92, 615 N.Y.S.2d 120, 121–22 (1994) (separate issue and effective dates specified in order to antedate the effective date of an insurance policy); *Taggert,* 277 A.D. at 1051–52, 100 N.Y.S.2d at 564–65 (separate issue and effective dates specified in order to effectuate choice of law governing the agreement). Accordingly, the insurance law as it has developed in New York and elsewhere allows parties to set their own "issue date" and to distin-

guish the issue date from the effective date.

Reading "the date as of which a covered policy is first issued" as a reference to the insurance law term of art "issue date" has the virtue of hewing more closely to the language of the statute than reading the provision to mean "effective date," while nonetheless giving meaning to the words "as of" by viewing the relevant date not as a date fixed to some actual event in the world, but rather as a date subject to contractual specification.

On the other hand, reading the start date of the three year period as one that is open to negotiation and as one that may have no other functional significance than to define the start date of the three year required period would enable insurers easily to avoid offering personal lines insurance for three years. By specifying an "issue date" earlier than the effective date, insurers could reduce the period of coverage below three years. If the purpose of the provision as written in 1974 was "to provide a three year period of guaranteed renewability," N.Y.Legis.Ann.1974, at 220, then interpreting the phrase at issue here to mean a contractually-specified "issue date" threatens to undo the aims of the statute.

Moreover, if the third reading is the correct one, and the statutory provision depends on a contractually agreed "issue date," the statute gives no guidance as to what determines the beginning and end of the required three-year period for an insurance contract, like the present one, that fails to specify an agreed-upon issue date. In the absence of an agreed "issue date," the statutory inquiry would presumably default to either the execution date or the effective date, each having the benefits and defects discussed above.

\* \* \*

The insurance case law of the New York courts does not furnish a clear answer as to the meaning of the phrase at issue. It is clear that under New York law, contracts of insurance may specify an "issue date" and an "effective date," and that neither of these dates need be the date on which the policy was actually executed. *See Guardian Life Ins.,* 70 N.Y.2d at 889, 524 N.Y.S.2d at 378, 519 N.E.2d at 289; *B.T.R. East Greenbush,* 206 A.D.2d at 791–92, 615 N.Y.S.2d at 121; *Seaver v. Massachusetts Bonding & Ins. Co.,* 7 A.D.2d 310, 311–15, 182 N.Y.S.2d 918, 919–22 (1959); *Forrest,* 195 Misc. at 16, 86 N.Y.S.2d at 914. This principle, however, does not decide the meaning of the statutory language on which this case turns. Thus, despite the passage of almost thirty years since the enactment of the provision in question, the issue presented here appears to be one of first impression.

As a result, we think that this important question of New York law should be decided by the New York Court of Appeals. *See* Judith S. Kaye & Kenneth I. Weissman, *Interactive Judicial Federalism: Certified Questions in New York,* 69 Fordham L.Rev. 373, 419 (2000) ("Certification has its greatest value where a policy choice among reasonable alternatives—the province of the state high court—is implicated, whether in the reading of a statute or in the evolution of a common law principle."). Interpretation of the statute by a federal court would not provide authoritative guidance. Were we simply to decide the issue, insurers that conformed their renewal and cancellation practices to our interpretation would run the risk of an eventual determination based on New York court rulings that their practices have not satisfied the Insurance Law's requirements, with potentially harsh consequences. *See* N.Y.Ins. Law § 3425(d)(1) (providing that failure to meet the requirements of the Insurance Law may result in an insurer being compelled to extend an insurance policy for another year). Insureds might rely on our analysis to conclude that they retained coverage, only to find upon eventual resolution of the question by the courts of New York that they were not covered. In our view, the interests of insurers writing coverage in New York and of New York

insureds would be best served if this case were decided upon certification of the governing question to the New York Court of Appeals. Accordingly, we request its guidance.

### Conclusion

We hereby respectfully certify to the New York Court of Appeals the following question: With reference to the facts of this case, does the phrase "the date as of which a covered policy is first issued" as used in Section 3425(a)(7) of the Insurance Law refer to (a) the date of execution of the policy; (b) its effective date; or (c) another date?

In formulating the certified question as we have here, we do not mean to limit the Court of Appeals to a narrow response. The certified question may be deemed expanded to cover any pertinent further issue that the Court of Appeals chooses to explain.

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of the briefs, appendix, and record filed in this Court by the parties. The parties are directed to bear equally such fees and costs as may be directed by the New York Court of Appeals.

This panel retains jurisdiction so that after we receive a response from the New York Court of Appeals we may dispose of the appeal.

### Certificate

The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to New York Court of Appeals Rule 500.17, and Section 0.27 of the Local Rules of the United States Court of Appeals for the Second Circuit, as ordered by the United States Court of Appeals for the Second Circuit.